### UNITED STATES v. GRIFFIN.
#### No. 9914.

United States Court of Appeals
Third Circuit.

Argued May 3, 1949.

Decided July 11, 1949.

728

Joseph G. Hildenberger, Bethlehem, Pa., for appellant.

Carl F. Pattavina, Washington, D. C. (Gerald A. Gleeson, United States Attorney Philadelphia, Pa., Golden N. Dagger, Attorney, Department of Justice, John J. O'Keefe, Jr., Attorney, Department of Justice, Washington, D. C., on the the brief), for appellee.

Before MARIS, GOODRICH and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Appellant was convicted under Title 18 U.S.C.A. § 88 [now § 371] of conspiracy to defraud the United States. During the period covered by the indictment, he was a United States commissioner. The indictment alleged that he, together with a deputy United States district court clerk and three Chinese interpreters conspired to defraud the United States by issuance of passports to persons not entitled thereto. Overt acts in connection with the conspiracy specifically attributed to the appellant were that he certified falsely that documents purporting to be affidavits in connection with passports, had been subscribed and sworn to in his presence. Two of the interpreter defendants pleaded guilty prior to the commencement of the trial and were witnesses for the Government. The third interpreter defendant was not tried as he was never apprehended. The trial was concluded July 1, 1948. There were verdicts of guilty against appellant and the deputy clerk. Motions for acquittal on behalf of appellant and the deputy clerk were made at the end of the Government's case and renewed at the close of all the evidence. The Court reserved decision in these and on November 30, 1948, granted the motion for judgment of acquittal in favor of the deputy clerk and denied the companion motion on behalf of appellant.

■ Appellant's first point is that the admission of voluminous testimony regarding the deputy clerk was reversible error even though, as expressly conceded, the jury was cautioned to disregard that testimony with reference to appellant. The theory of the argument seems to be that the Court should have granted the motion for acquittal on behalf of the deputy clerk prior to giving the case to the jury, and that if this had been done, then the Court should have and would have specifically instructed the jury to eliminate from its consideration any evidence against the deputy clerk, particularly in connection with the appellant. It is unwarrantably assumed that such course would have produced a different result as to the appellant.

The point is without merit. The Court in reserving decision on the motion for acquittal on behalf of the deputy clerk acted in exact accordance with Rule 29(b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. The pertinent part of that rule reads: "If a motion for judgment of acquittal is made at the close of all the evidence, the court may reserve decision on the motion, submit the case to the jury and decide the motion either before the jury returns a verdict *or after it returns a verdict of guilty* or is discharged without having returned a verdict." (Emphasis supplied.)

■ The second point is that the Trial Court committed reversible error by admitting into evidence two statements of the deputy clerk (one oral, one written) which he had made after the termination of the

conspiracy. Both of the statements contained references to appellant.

The oral statement was made by the deputy clerk to his superior, the court clerk, and the latter testified to it. The Court in allowing the testimony told the jury that "under no circumstances should you consider it damaging evidence or evidence at all against the defendant Griffin." The written statement was received in evidence the same way and under the same kind of restrictive language. Appellant again argues that the later discharge of the deputy clerk on his reserved motion for acquittal materially and improperly affected the situation. We cannot agree. The District Judge on the motion for acquital followed both the letter and spirit of Rule 29(b) of the Federal Rules of Criminal Procedure and in permitting the statements to go into evidence he properly protected appellant by limiting their use to their maker. Gambino v. United States, 3 Cir., 108 F.2d 140, lends no support to appellant's position. In that matter there was a statement by a defendant who had pleaded guilty prior to trial. The statement was allowed in evidence against all the other defendants remaining on trial. In reversing the judgment of the lower court, we held that the statement was admissible only against the maker thereof and that since his plea of guilty had taken him out of the case, his statement was not admissible at all. The instant circumstances are rather quite similar to those in United States v. Alfano, 3 Cir., 152 F.2d 395, where we upheld the admission in evidence against a co-defendant alone, of two statements made by him after the conclusion of the conspiracy.

Appellant's third point asserts that the Trial Court failed to properly define the specific crime charged against him.

The contention is that the indictment charged appellant with conspiracy to defraud the Government and that the Court in its charge merely defined appellant's crime as conspiracy to commit an offense against the United States. Examination of the charge does not bear this out. The Court, at the very beginning of its charge, told the jury that the indictment in the case had been read to them by the United States Attorney, who, the Court said, had given the jury "a comprehensive definition of the conspiracy that these defendants are alleged to have committed." The Court then stated that: "In general, the indictment charges that these defendants conspired: * * * *to defraud* the United States (a) of and concerning its governmental functions and rights hereinafter described, to wit: of and concerning its rights to have its business and affairs, and particularly the execution of documentary evidence of United States citizenship and the execution and applications for United States passports conducted honestly and impartially in its behalf as the same should be conducted * * *." (Emphasis supplied.)

The Court followed this by giving the jury the details of the indictment.

At the request of the defense, the Court specifically charged that: "The indictment charges a single conspiracy between the defendants * * * *to defraud* the United States. If, from the evidence in this case, you do not believe, beyond a reasonable doubt, that there was such a single conspiracy *to defraud* the United States, or if you believe that there were a number of separate conspiracies, * * * then you must acquit the defendants." (Emphasis supplied.)

In reading the conspiracy statute to the jury the Court at first omitted the language "or to defraud the United States in any manner or for any purpose". His attention was called to this after he had charged all of the above. He then told the jury: "I defined the conspiracy statute for you by stating, 'If two or more persons conspire to commit any offense against the United States', but the statute goes on and says, 'If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall * * * *' and then the penal provisions appear in the statute; so wherever I use the phrase in my charge heretofore 'to com-

mit any offense against the United States', you must add, 'or to defraud the United States'."

■ We think that the charge, considered as a whole, gave the jury a fair, comprehensive picture of the crime involved. United States v. Levy, 3 Cir., 153 F.2d 995; United States v. Noble, 3 Cir., 155 F. 2d 315; United States v. Max, 3 Cir., 156 F.2d 13.

■ The next point urges that reversible error was committed in admitting certain testimony by appellant's secretary. It is claimed that the testimony was irrelevant because it concerned a person who was a citizen of the United States and entitled to the passport sought by him. A reading of the testimony shows it to have been material in indicating appellant's course of conduct and state of mind in connection with the fraudulent passport scheme. The evidence was clearly admissible. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 1222; Egan v. United States, 8 Cir., 137 F.2d 369, certiorari denied 320 U.S. 788, 64 S.Ct. 195, 88 L.Ed. 474.

Appellant alleges as reversible error that the Trial Court did not instruct the jury that the pleas of guilty by the two interpreter-defendants could not be considered as evidence against appellant.

No instruction was requested on this. After the Court had completed his main charge, he conferred with the defense attorneys and charged every further suggestion they had. As to accomplice testimony, the Court said: "Mr. McBride in his statement to you warned you about the consideration that must be given to accomplice testimony. He stated the rule correctly. The law looks with suspicion on accomplice testimony. It has to be given some weight, however, because in many instances that is the only evidence available, but at the same time, that is weighed low in the rung of the law."

And the Court charged very strongly on reasonable doubt and presumption of innocence, saying as to the latter: "Every person charged with a criminal act is by the law presumed to be innocent of that charge; and each of the defendants here is entitled to the presumption of innocence during your deliberations, and until such time as the Government by evidence has convined you beyond a reasonable doubt to the contrary. By that I mean that the presumption of innocence was with the defendants not only when they pleaded not guilty, and throughout the whole trial, but always until such times as the evidence establishes to your satisfaction their guilt beyond a reasonable doubt. This presumption of innocence is no mere idle theory to be cast aside by the jury, it is a substantial part of the law of the land and follows the defendants through the entire case, and must not be lost sight of by the jury until it has been overcome by evidence which establishes the defendant's guilt beyond all reasonable doubt."

Regarding burden of proof, the Court stated: "Now the other matter about which I should advise you is that the burden of proof is on the Government, at all times, and it assumes its burden and it must carry it through until the case goes to you for consideration."

■ From the entire charge and under the important circumstances that there was not only no request to charge the effect of the pleas of guilty, but not the slightest intimation by exception or suggestion that this was desired,[1] we are satisfied that the

---

[1] Rule 30 of the Federal Rules of Criminal Procedure provides: "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the request prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

Court did not commit reversible error in connection with this point. Boyd v. United States, 271 U.S. 104, 108, 46 S.Ct. 442, 70 L. Ed. 857; United States v. Alfano, 3 Cir., 152 F.2d 395, 397.

Appellant claims as a ground for reversal, the failure of the Trial Court to withdraw a juror because of alleged improper newspaper publication of articles concerning the trial during the trial and because of failure of the Trial Court properly to instruct the jury concerning such publication.

At the opening of the second day of trial, counsel for appellant directed the Court's attention to newspaper and radio stories about the trial and allegedly prejudicial to the appellant. The Court said: "I am going to see if I can erase it, if I conclude that I haven't I am going to give reconsideration to your motion."

Just prior to the noon recess that same day, the Court said to the jury:

"I think at this point we will take our luncheon recess but before we do so I want to say a few words to the Jury. Members of the jury, I wish to admonish you that you must not reach at this time any conclusions in this case based upon the evidence which has been brought forward in this court room. You are not to discuss this case with anyone, not even among yourselves, because it is not right to reach a conclusion however tentative, until the case is concluded.

"Now, again, I want to emphasize that it is the evidence you hear in this court room, not what you might happen by chance to hear or read elsewhere; e. g., the defendant Griffin is not standing trial for bribery. The charge is conspiracy to defraud the United States. This is the charge that must be proved. It is the practice of some Trial Judges to admonish the Jury each trial day. Well, I think this Jury consists of intelligent ladies and gentlemen, you have integrity and honesty and I am not going to admonish you any further in this trial unless the occasion should arise whereby it should become absolutely necessary for me to do so."

■ There is no proof that the jury or any member of it saw or heard the stories mentioned, but assuming that this did occur, there is not the slightest reason for inferring that real harm resulted to appellant thereby. United States v. Katz, 3 Cir., 173 F.2d 116. Complaint is made that the Court in its above admonition did not directly tell the jury not to read the newspapers or listen to the radio. In our judgment, the Court was entitled to consider as he did, that he was dealing with an intelligent American jury of honesty and integrity. He told its members plainly that they were to decide the case only on the evidence they heard in the court room, not what they "might happen to hear or read elsewhere". Immediately thereafter, inconspicuously and effectively, he dealt with the objectionable articles saying, " * * * e. g., the defendant Griffin is not standing trial for bribery. The charge is conspiracy to defraud the United States. This is the charge that must be proved". Strong indication that what the Court said disposed of the incident in fair and practical fashion is shown by the fact that the case is barren of evidence that any member of the jury was at all affected or influenced by newspaper or radio stories of the trial proceedings. As Mr. Justice Holmes said in Holt v. United States, 218 U.S. 245, at page 251, 31 S.Ct. 2, at page 6, 54 L.Ed. 1021, 20 Ann.Cas. 1138; "If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day."

■ The final point is that the Trial Court committed reversible error in denying appellant's motion for acquittal. This is founded on the contentions (1) that the Government proved if anything, not one over all conspiracy but a series of unconnected conspiracies, and (2) that circumstantial evidence was relied on by the Government to establish its case, therefore it was necessary in order to convict that the only hypothesis which could be drawn from the evidence must be that of guilt and that every reasonable inference of innocence must be excluded.

732

The record reveals that both these statements are factually wrong. There is ample evidence from which the jury could find that the fraudulent passport operation was but one conspiracy with the interpreter defendants producing the applicants, witnesses and necessary information and the appellant taking care of the affidavits. All three of the conspirators knew each other and knew that the purposes of the spurious affidavits were to obtain United States passports for the applicants. The instant facts in no way resemble those in Kotteakos v. United States, 328 U.S. 750, 751, 755, 66 S.Ct. 1239, 90 L.Ed. 1557. There, as the Supreme Court held, 238 U.S. at page 755, 66 S.Ct. at page 1243, "The proof * * * admittedly made out a case, not of a single conspiracy, but of several, notwithstanding only one was charged in the indictment." Cf. Blumenthal v. United States, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154.

Nor can the statement be substantiated that the Government relied solely on circumstantial evidence to prove the conspiracy. For example; John Lee, one of the defendant interpreters, testified that in October 1946, he went to appellant's office in response to a telephone call from appellant. Lee said that appellant there told him and Lee Hoy, "I don't want you boys use any more of my affidavits." Lee stated that appellant also said to them, "I don't want your boys use any more of my paper." Lee said he told appellant that "some of paper already sent in to Washington for passport" and that appellant replied "That part is all right, but tell the boys don't use any more". Lee was asked whether on that same occasion appellant had told him to tell the boys to destroy the passports and Lee's answer to this was "That is right, because it is no use any more." In response to the Court's query as to who he meant by the "boys", Lee answered, "Whoever boy has birth affidavit, whoever has passport."

After a careful consideration of the whole record, we find nothing to warrant a reversal of the judgment below.

It will be affirmed.