Danny KATES, Plaintiff-Appellant,

v.

Louis NELSON, Warden, Defendant-Appellee.

No. 23688.

United States Court of Appeals, Ninth Circuit.

Nov. 25, 1970.

Kristina M. Hanson (argued), of Morrison, Foerster, Holloway, Clinton & Clark, San Francisco, Cal., for plaintiff-appellant.

* The Honorable Charles L. Powell, United States District Judge for the Eastern District of Washington, sitting by designation.

Timothy G. Laddish (argued), Deputy Atty. Gen., Thomas C. Lynch, Atty. Gen., Derald E. Granberg, Deputy Atty. Gen., San Francisco, Cal., for defendant-appellee.

Before CHAMBERS and MERRILL, Circuit Judges, and POWELL, District Judge.*

POWELL, District Judge:

Appellant, Danny Kates, appeals from an order of the United States District Court denying his petition for a writ of habeas corpus. This Court has jurisdiction under 28 U.S.C. § 2253.

Appellant was charged with grand theft. He appeared with retained counsel during his preliminary hearing. Probable cause was established and the case was set for trial in state court. The attorney who had represented Appellant at the preliminary examination was permitted to withdraw from the case and another attorney was appointed.

On the first day of the trial, after several witnesses had been cross-examined, Appellant expressed dissatisfaction with the way in which he was being represented.[1] The next day in the trial judge's chambers an exchange took place with regard to Appellant's representation:

"THE COURT: * * * Mr. Kates, Mr. Helm has come in and informed the Court that you are dissatisfied with his services, is this true?

"THE DEFENDANT: I thought that I let that be known yesterday in Court, Your Honor.

* * * * * *

"THE COURT: * * * I have been in the legal profession for many, many years—and I have known Mr. Helm for many, many years. I have seen him handle many, many hopeless cases and have seen him win them—but your interrupting out there—and wanting to be

1. Concluding the testimony of a State witness, Appellant interrupted the proceedings with the following outburst: "Your Honor, I'm not being represented properly * * *." Partial Transcript of Proceedings, January 28, 1964, p. 34.

heard—isn't going to make a favorable impression on this jury.

Mr. Helm knows what he is doing, and—

"MR. KATES: (Interrupting) So do I.

"THE COURT: * * *

Now, if you don't want to consent to Mr. Helm representing you, and proceeding with this case, without further interruption from you, I will then give you the choice of permitting Mr. Helm to retire as your attorney, and you can act as your own attorney.

Do you wish to do this, Mr. Kates?

"THE DEFENDANT: Well, I told him yesterday—that there wasn't anything that he said that was just right there— the way I wanted him to cross-examine the witness.

"THE COURT: Just a second, now. How much experience do you have, Mr. Kates?

"THE DEFENDANT: I have none, Your Honor.

"THE COURT: Well, then, let him do it; let him handle your case.

"THE DEFENDANT: But I have judgment—I have common sense.

"THE COURT: Well, if you feel your judgment and common sense is better than a man who has had years of experience in the law—

"THE DEFENDANT: He is not the one that is going to prison. * * *

* * * * * *

"THE COURT: Mr. Kates, no Court permits a Defendant to cross-examine when he has an attorney there. Either the attorney runs the case, or the client runs the case—and I'm going to give you that choice now. * * * [A]nd if you discharge Mr. Helm as your attorney, then you must handle your own case—and you will be treated in this courtroom the same as any attorney is treated * * *

* * * * * *

"THE COURT: * * * If you're not satisfied with Mr. Helm, you may speak now—otherwise, Mr. Helm will continue to represent you. If you're not satisfied with Mr. Helm—I, at your request, will permit him to withdraw as your attorney —but you will then proceed with this trial as your own attorney.

* * * * * *

"THE DEFENDANT: I want it to be known that he (Mr. Helm) doesn't have to represent me any more—and I wasn't satisfied with him—* * *.

* * * * * *

"THE COURT: * * * Do you want him (Mr. Helm) to represent you or don't you? Just answer yes or no.

"THE DEFENDANT: I don't want Mr. Helm representing me any more. I am going to represent myself in Court * * *

* * * * * *

"THE COURT: * * * Do you want Mr. Helm to proceed, or don't you?

If he (Mr. Helm) withdraws as your attorney, you will sit out there and represent yourself * * *

"THE DEFENDANT: * * * (I) don't feel that I can be represented properly by the attorney—and I'm not satisfied with him * * * (N)ot only am I not satisfied—I am not going to represent myself * * *

"THE COURT: We will proceed. Mr. Helm will continue to be your Counsel, sir.

* * * * * *

"THE DEFENDANT: I want it to be known that I don't want anyone out there representing me—and I am not going to represent myself.

* * * * * *

"THE COURT: (To Defendant) Do you wish Mr. Helm or don't you?

"THE DEFENDANT: I wasn't satisfied with him.

* * * * * *

"THE COURT: You don't want Mr. Helm to represent you, is that correct?

"THE DEFENDANT: I have already stated that I don't feel that I was being represented right. * * *

* * * * * *

"THE COURT: Answer yes or no—do you want Mr. Helm to represent you or don't you?

"THE DEFENDANT: I not only don't want Mr. Helm, but I'm not going to try to do it myself, try to represent myself.

\*   \*   \*   \*   \*   \*

"THE COURT: Don't interrupt, Mr. Kates. I understand now that you do not want Mr. Helm to represent you. Answer that yes or not.

"(No Answer)

"THE COURT: Is that correct?

"THE DEFENDANT: I answered that one way.

"THE COURT: All right, Mr. Helm will continue to represent you.

"THE DEFENDANT: I can answer that—that I'm not going to help him represent me out in Court any more—and neither am I going to represent myself \* \* \*

\*   \*   \*   \*   \*   \*

"THE COURT: \* \* \* Now, I want you to understand that I am going to permit Mr. Helm to withdraw as your attorney—and you will conduct your own case from hereon.

"MR. HELM: Thank you, Your. Honor. May the record show that I am turning my file over to the defendant?

"THE COURT: The record may show that you have turned over your file to the Defendant.

"THE DEFENDANT: I don't even want it. \* \* \*"

Partial Transcript of Proceedings (Superior Court, Contra Costa County, California), January 29, 1964, pp. 35–41, 43–45, 47 [Exhibit D in the proceedings below].

During the remainder of the trial witnesses were called by the prosecution and by Appellant, representing himself *in propria persona*. Appellant was found guilty of grand theft as charged and subsequently sentenced; no appeal was taken from the judgment of conviction. Some two years following his sentence Appellant began filing a series of *error coram nobis* and *habeas corpus* petitions in various counties in the California judicial system, alleging essentially that he had been denied his right to counsel; these petitions were successively denied. On a previous habeas corpus petition filed in the United States District Court, an order issued holding that Appellant's claim respecting his right to counsel was premature in that he had not exhausted his state remedies.

The instant petition was filed on March 18, 1968; the district court, having considered all of the claims, found that there were no constitutional infirmities which would entitle Appellant to the relief sought and thus denied the petition. On this appeal Appellant contends that he has exhausted his state remedies and that he was deprived of his constitutional right to the assistance of counsel at the trial which resulted in his conviction and sentence.

In its order the district court did not discuss exhaustion of state remedies; nor do we regard the question as being material for the reason that the matters argued have substantially been before the state judiciary prior to the filing of the instant petition. Congress did not intend "to require repetitious applications to state courts" and we therefore decline to discuss exhaustion. See Brown v. Allen, 344 U.S. 443, 449, n. 3, 73 S.Ct. 397, 403, 97 L.Ed. 469 (1953); Roberts v. LaVallee, 389 U.S. 40, 42, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967). See also, United States ex rel. Gockley v. Myers, 411 F.2d 216 (3rd Cir. 1969).

Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), established the right of an indigent defendant in a state criminal trial to have the assistance of counsel. This Court, in Beasley v. Wilson, 370 F.2d 320, 322 (9th Cir. 1966), has held:

"While the courts are bound to recognize and protect the right to counsel provided by the Sixth and Fourteenth Amendments to the Constitution, this right is not absolute in the sense that it may not be waived."

Quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the Court continued:

"A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." 370 F.2d at 322.

The above definition of waiver was reiterated in the recent case of Groves v. Prickett, 420 F.2d 1119, 1125 (9th Cir. 1970). To constitute a waiver the record or evidence must show that the accused was offered counsel but intelligently and understandingly rejected the offer. Boykin v. Alabama, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L.Ed.2d 274 (1969); Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962). The Court of Appeals for the Fifth Circuit, in McConnell v. United States, 375 F.2d 905, 910 (5th Cir. 1967), laid down the following guidelines:

"In determining whether there is a competent, informed and intelligent waiver, the judge before whom an accused appears without counsel is charged with a serious responsibility that cannot be perfunctorily performed. * * * All reasonable presumptions must be indulged against a waiver * * * and any waiver must clearly appear on the record."

Here, the Appellant stated unequivocally that he no longer wished the services of his appointed counsel. He further indicated to the court that he would refuse to cooperate if counsel were allowed to continue. Appellant, though he professed to be incapable of representing himself, attempted to excuse his conduct by insisting that his attorney was not handling the case properly. The record bespeaks of a simple disagreement between Appellant and his appointed counsel as to the manner in which the case was to be conducted. Appellant now is in no position to complain that he was forced to proceed without counsel, a situation for which he was intentionally and knowingly responsible. See United States v. Grow, 394 F.2d 182 (4th Cir. 1968), cert. den. 393 U.S. 840, 89 S.Ct. 118, 21 L.Ed.2d 111. The Constitution does not force an unwanted attorney upon a defendant. Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942); Minor v. United States, 375 F.2d 170, 172 (8th Cir. 1967), cert. den. 389 U.S. 882, 88 S.Ct. 131, 19 L.Ed.2d 177.

"If the defendant does not agree with his counsel, he has a right to present his own contentions; but the sovereign is under no duty to search for counsel until it finds one who will agree with him." Jackson v. United States, 258 F.Supp. 175, 184 (D.C.N.D.Tex.1966).

And in Williams v. Beto, 354 F.2d 698, 705, 706 (5th Cir. 1966), involving a habeas attack upon the effectiveness of counsel, that Court stated:

"When one seeks the assistance of counsel, he thereby confesses his own inadequacy in the field and stipulates his willingness, like any other client * * * to be bound by the presumably superior knowledge of the professional man on whose assistance he proposes to depend.

"He agrees that this attorney will be in charge of his defense in the legal battle about to begin. * * *

"If the indigent client, conferred upon and trusted to the lawyer, knows more about what ought to be done in handling the case, then he needs no counsel and it is folly for him to ask for it."

The case here is not unlike that of United States ex rel. Davis v. McMann, 386 F.2d 611, 618, 619 (2nd Cir. 1967), wherein that Court, quoting at length from the record, held:

"[W]e have recognized a right of a defendant to proceed without counsel and to refuse the representation of assigned counsel. * * * [H]e may not use this right to play a 'cat and mouse' game with the court * * * or by

ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel. More particularly is this so when, during trial, the defendant discharges his counsel."

While Appellant did not waive the entire California bar, he, knowing full well the nature of the charges against him and the enormity of the consequences if convicted, adamantly refused the further assistance of his appointed counsel, an able member of that bar. The record fully supports the district court's finding that Appellant was not deprived of his constitutional right to the assistance of counsel since he expressly waived such representation; the order denying Appellant's petition for a writ of habeas corpus is therefore affirmed.